## Wilson & al. *vs.* Ayer & als.

*W. S.* devised certain lands to the children of his daughter *M. W.* who were minors, living with their parents; but the will, being defectively executed, and inoperative, was never proved. Afterwards the heirs at law undertook to settle the estate agreeably to the will, without administration; and accordingly *M. W.* with *S. W.* her husband, released all her right in the land to the executors, who at the same time conveyed it to the children; a large debt due from *S. W.* to the deceased being also extinguished. It was held that this conveyance was good against the prior creditors of *S. W.* who subsequently extended an execution on his life estate in the land.

This was an action of trespass *quare clausum fregit*, brought by certain children of *Samuel Wilson*; and it came before the court upon the following case stated by parties.

The *locus in quo* belonged to *William Symmes*, the father of the plaintiffs' mother, but was always occupied by *Samuel Wilson* their father, who dwelt there with his family, of which they were a part; their mother also being alive. On the 20th day of *December*, 1825, *William Symmes* died, having made a will, which however was inoperative, it being attested by only two witnesses, and therefore was never proved, wherein he devised the *locus in quo* to the plaintiffs. On the 20th day of *February* 1826, the heirs of *William Symmes* undertook to settle his estate without any administration, and according to his intention as expressed in the will; and in pursuance of this arrangement the *locus in quo* was conveyed by *Samuel Wilson* and his wife, by a deed releasing all their right therein to two of her brothers, who were named as executors in the will; and who, at the same time, conveyed it by deed to the plaintiffs, for the consideration, in part, of love and affection therein expressed. As a part of the same arrangement, the sum of seven hundred and thirteen dollars was allowed to *Samuel Wilson*, father of the plaintiffs, by extinguishing a debt of that amount which he owed to the deceased.

The defence of *Ayer*, the principal defendant, the others being his servants, was founded upon the extent of an execution in his favor against *Samuel Wilson*, the father, by which the *locus in quo*

was regularly set off by metes and bounds *March* 10, 1829, in satis-faction of a debt which was created in *January* 1824, for the origi-nal sum of about ninety dollars.

*N. Emery*, argued for the plaintiffs.

*E. Shepley*, for the defendants, contended that the whole transac-tion showed a conveyance of the life estate which was vested by law in *Samuel Wilson*, for other than valuable considerations; and that therefore it was void against prior creditors, who might lawfully take it in satisfaction of their debts. *Bennett v. Bedford Bank* 11 *Mass.* 421. The extent thus made, he argued was good for the life estate; *Roberts v. Whiting*, 16 *Mass.* 186; and was valid against these plaintiffs, notwithstanding it was made by metes and bounds, upon a portion in severalty, instead of a share in common. *Bart-lett v. Harlow*, 12 *Mass.* 348; *Varnum v. Abbot, ib.* 474.

Weston J. delivered the opinion of the Court at the ensuing *May* term, in *Cumberland*.

It appears that in *December* 1825, *William Symmes* died seised of the land, where the trespass, complained of in this action, is al-leged to have been committed. *Symmes* left a will, which however was inoperative for want of a legal attestation, and the land descen-ded to his heirs at law, of whom the wife of *Samuel Wilson* was one, whereby the said *Wilson* having had issue by his wife became seised of a life estate in that portion, which descended to her. In pursuance of an arrangement made by the family, *Wilson* and his wife, in *February* 1826, conveyed their interest to her two brothers, who conveyed the premises in question to the plaintiffs. And it is understood that this arrangement corresponded with the provisions in the will. One of the defendants was a creditor of *Wilson* prior to these conveyances, and having obtained judgment against him, has caused the execution issuing thereon to be levied upon the land in question as the property of *Wilson*, insisting that his conveyance to his wife's brothers is fraudulent and void against his creditors.

His creditors had a right to look only to his life estate. The in-

Wilson *v.* Ayer.

heritance belonged to his wife and her heirs; and if she, with the assent of her husband, was disposed to convey the inheritance for the benefit of their children, his creditors had no right to complain. There was nothing therefore fraudulent or illegal in that part of the consideration which consisted in the conveyance, by the grantees of *Wilson* and wife, of a certain portion of the land descended, to their children.   As to *Wilson's* interest, he could not convey it to defraud his creditors; but he had a right to sell it for a valuable and adequate consideration; and a sale thus made could not be defeated.   Now it appears, that besides the land conveyed to his children, which was an equivalent for the inheritance, he himself received the sum of seven hundred and thirteen dollars.   There has been no proof tending to show, nor has it been suggested or pretended, that this was not the full value of his life estate.   It does not appear that there was any thing colorable or collusive in the transaction.   *Wilson* did not, it is true, receive this part of the consideration in money; but it went to pay a just debt, due from him to *Symmes'* estate; and the payment of such a debt is a consideration sufficiently meritorious.   Although there was no administration on this estate, *Wilson* was discharged from his debt by the assent of the heirs, the estate being solvent, and there being no interposing or conflicting claim of any creditor to the estate.   We are unable to perceive any thing morally or legally fraudulent in these transactions.   The deed to the plaintiffs purports to be in part for love and affection.   If their grantors had a fair and legal title to the land, which we see no reason to doubt, they might part with it upon such considerations as they thought proper, if they did not thereby defraud their own creditors, whose rights and claims are not now the subject of discussion.

The opinion of the court is, that upon the facts stated, the plaintiffs are entitled to judgment.